NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL STEBBINS, *individually and on behalf of those similarly situated*,<br><br>                            Plaintiff,<br><br>                              v.<br><br>PETROLEUM EQUIPMENT SERVICES d/b/a WILDCO PES,<br><br>                            Defendant. | Civil Action No. 21-15117 (SRC)<br><br>**OPINION & ORDER** |

**CHESLER**, District Judge

This matter comes before the Court upon Defendant Petroleum Equipment Services' ("Defendant" or "PES") motion to dismiss Plaintiff Michael Stebbins's ("Plaintiff") Complaint for failure to state a claim upon which relief can be granted. (ECF No. 14). Plaintiff has opposed Defendant's motion and filed a cross-motion for leave to file an Amended Complaint. (ECF No. 16). For the reasons that follow, the Court will grant Defendant's motion to dismiss in part and deny it in part and grant Plaintiff's motion to amend his Complaint.

    **I.**    **BACKGROUND**[1]

This case arises out of a dispute regarding Defendant's compensation of its customer service technicians. Defendant provides technical services for petroleum service centers.

---

[1] The Background section sets forth facts alleged in Plaintiff's Complaint and Proposed Amended Complaint ("PAC"). (ECF No. 1). The facts in the Complaint, and the PAC are taken as true for purposes of this motion to dismiss only. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994) ("[I]n considering a motion to dismiss for failure to state a claim under Rule 12(b)(6). . . the district court [is] required to accept as true all allegations in the complaint. . . .").

1

(Compl. ¶ 45). Plaintiff worked for Defendant from around June 2020 to October 2020 as a Field Service Technician. (Compl. ¶ 46). Plaintiff's job duties required him to travel to various customer sites. (Compl. ¶ 62). In order to transport Plaintiff's tools and materials, Defendant provided him with a specialized truck that he kept at his home. (Compl. ¶ 63).

Defendant paid Plaintiff on an hourly basis as follows. Plaintiff reported to Defendant all hours between the time he left his home for his first customer service assignment of the day and the time he arrived back home after his last customer service assignment of the day. (Compl. ¶ 67). Defendant then deducted forty-five minutes from the number of hours reported by Plaintiff to account for the time Plaintiff spent commuting to his first assignment and home from his last assignment. (Compl. ¶ 68). Plaintiff was paid according to the number of hours remaining after the forty-five-minute deduction. (Compl. ¶ 68).

Plaintiff alleges Defendant's policy of deducting time spent commuting to and from work violated federal and state wage and hour laws in two ways.[2] First, Plaintiff alleges the commute time deduction resulted in a failure to pay him one and half times his regular rate for any hours worked over forty hours in violation of the federal Fair Labor Standards Act ("FLSA") and the New Jersey Wage and Hour Law ("NJWHL"). (Compl. ¶¶ 72–86). Second, Plaintiff alleges the deduction resulted in a failure to pay him for all hours worked in violation of the New Jersey Wage Payment Law ("NJWPL") and New Jersey state common law.[3] (Compl. ¶¶ 87–99).

Plaintiff originally filed his Complaint in the United States District Court for the District of New Hampshire. (ECF No. 1). Defendant filed a motion to transfer the case to this Court, which the District of New Hampshire granted. (ECF Nos. 8 & 9). After the transfer, Defendant

---

[2] Plaintiff also indicates that he is seeking to bring a collective action under the Fair Labor Standards Act ("FLSA"), (PAC ¶¶ 11–16), and represent two classes pursuant to Federal Rule of Civil Procedure Rule 23 corresponding to the two New Jersey statutes under which he brings his claims, (PAC ¶¶ 17–34).
[3] The PAC does not include the state common law claim, (Pl. Br. at 11), so the Court does not address it here.

2

filed the currently pending motion to dismiss all of Plaintiff's claims. (ECF No. 14). Plaintiff opposed the motion and filed his own cross-motion for leave to amend the Complaint. (ECF No. 16). Defendant opposes Plaintiff's motion to amend. (Def. Reply Br. 2–8).

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 15(a) requires courts to grant leave to amend "freely. . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave to amend under Rule 15 should be denied only in certain circumstances, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice, or clear futility of the amendment.'" Brown v. Camden City Sch. Dist., No. 19-cv-00114, 2020 WL 6055070, at *2 (D.N.J. Oct. 13, 2020) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Defendant argues Plaintiff's proposed amendment is futile. (Def. Reply Br. 2–8). Futility means that the proposed amendment "would fail to state a claim upon which relief can be granted." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). In determining whether an amendment is futile, the court applies "the same standard of legal sufficiency as applies under Rule 12(b)(6)." Id.

Pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint will meet this plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the complaint need not demonstrate that a defendant is probably liable for the wrongdoing to meet the requisite pleading standard, allegations that give rise to the mere possibility of unlawful conduct are insufficient to withstand a motion to

dismiss. Id.; Twombly, 550 U.S. at 557. Further, a complaint is not required to include highly "detailed factual allegations," but must include more than mere "labels and conclusions." Twombly, 550 U.S. at 555. Finally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678. The Court addresses Plaintiff's federal and state law claims under the plausibility standard below.

### B. The FLSA Claim

Plaintiff alleges Defendant violated the FLSA by failing to pay him overtime compensation. (Compl. ¶¶ 72–86); 29 U.S.C. § 207(a)(1). The original Complaint and the Proposed Amended Complaint ("PAC") contain two distinct categories of allegedly compensable work for which Plaintiff was not paid. First, Plaintiff alleges his commute to and from customer work sites using a truck provided by Defendant and carrying tools necessary for his job is a compensable activity under the FLSA (the "commute time allegations"). (Compl. ¶¶ 62–70). Second, in addition to the commute time allegations, the PAC alleges that Plaintiff completed a number of tasks for which he was not compensated after returning home from customer sites, including filling out and submitting paperwork, checking the service board to ensure all customer service requests were completed, and answering emails (the "postliminary allegations"). (PAC ¶¶ 63–64). Defendant argues that neither category constitutes "compensable work" under the FLSA. (Def. Br. at 5–10); (Def. Reply Br. at 2–7).

The basic principle underlying the FLSA is that "[e]mployees are entitled to compensation only for 'work.'" Reich v. N.Y.C. Transit Auth., 45 F.3d 646, 651 (2d Cir. 1995). However, the FLSA does not define "work." IBP, Inc. v. Alvarez, 546 U.S. 21, 25 (2005). Initially, the Supreme Court adopted a broad definition of the term. Id.; see also De Asencio v.

Tyson Foods, Inc., 500 F.3d 361, 367 (3d Cir. 2007). For example, in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), the Court held that the FLSA required an employer to compensate factory employees for time they spent walking from time clocks at the entrance of the factory to their workstations. Id. at 691–92. A year after Anderson, in 1947, Congress narrowed the FLSA via the Portal-to-Portal Act. Carter v. Panama Canal Co., 463 F.2d 1289, 1293 (D.C. Cir. 1972). Under the Portal-to-Portal Act, employers need not compensate employees for

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a).

The FLSA regulations define "principal activities" as "those which the employee is employed to perform." 29 C.F.R. § 790.8(a); see also Gorman v. Consol. Edison Corp., 488 F.3d 586, 590 (2d Cir. 2007). The Supreme Court has also interpreted the term "to embrace all activities which are an integral and indispensable part of the [employee's] principal activities." Integrity Staffing Sols., Inc. v. Busk, 574 U.S. 27, 33 (2014) (internal quotation omitted). If a work activity is classified as a "principal activity" it is compensable no matter if it is performed outside of an employee's typical work shift. Colella v. City of N.Y., 986 F. Supp. 2d 320, 338 (S.D.N.Y. 2013). As a general matter, regular commute time is not considered a principal activity or integral and indispensable to a principal activity under the Portal-to-Portal Act. 29 C.F.R. § 785.35; see also Lassen v. Hoyt Livery, Inc., 120 F. Supp. 3d. 165, 174 (D. Conn. 2015)

5

(explaining that the Portal-to-Portal Act "established th[e] principle" that ordinary commute time is not compensable).

In 1996, Congress amended the Portal-to-Portal Act by passing the Employment Commute Flexibility Act ("ECFA"). The ECFA specifically addresses the compensability of commute time for employees who use employer-owned vehicles. Chambers v. Sears Roebuck & Co., 428 F. App'x 400, 409 (5th Cir. 2011). It states:

> the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a).

In all, after the passage of the Portal-to-Portal Act, an employee may only receive compensation for "principal activities" and those activities that are integral and indispensable to such principal activities. Under the ECFA, travel in an employer-owned vehicle and any activities incidental to this travel are not considered principal activities if the use of the vehicle is (1) within the "normal commuting area" and (2) subject to an agreement between the employee and employer. Chambers, 428 F. App'x at 410. With this legal backdrop in mind, the Court analyzes the sufficiency of both the commute time allegations and the postliminary allegations.

  1. The Commute Time Allegations

Plaintiff's commute using Defendant's truck is not compensable. Both prongs of the ECFA are met here: (1) Plaintiff's travel is within the normal commuting area and (2) his use of the truck is subject to an agreement between him and Defendant. Plaintiff does not appear to contest either of these points. Indeed, neither the original Complaint, the PAC, nor any of Plaintiff's briefing contain any allegations or argument that Plaintiff's travel using Defendant's

6

vehicle was not within the normal commuting area. And the original Complaint explicitly refers to various requirements Defendant imposed on Plaintiff's use of the company trucks, (Compl. ¶¶ 65, 66, 67), as well as Defendant's "policy" of deducting forty-five minutes from Plaintiff's reported working time, (Compl. ¶ 68). Those requirements, and that policy, are found in Defendant's employment handbook, which Defendant attaches to its motion along with Plaintiff's acknowledgement that he received the handbook.[4] (Def. Br., Exhibits B & C, Page ID# 85, 93–95, 100). As such, the Court concludes that the use of the truck was governed by an agreement between Defendant and Plaintiff: the handbook. See Rutti v. Lojack Corp., 596 F.3d 1046, 1052 (9th Cir. 2010) (canvassing the ECFA's legislative history and concluding that the agreement governing the use of a company vehicle need not be written and may be based on informal industry or company practices). Plaintiff does not argue otherwise, nor does he dispute any of the underlying facts regarding the handbook and his acknowledgement of receipt.

Instead, Plaintiff primarily argues that the commute time is compensable because the use of the company truck was integral and indispensable to his principal activity of servicing customer sites. He explains that "[t]he transporting of the trucks and the materials within to and between customer sites" was "necessary to complete the services required for Defendant's customers." (Pl. Br. at 6). Thus, for Plaintiff, the commute time is compensable because he could not service the customer sites without transporting and storing materials and tools in the company-owned truck. (Pl. Br. at 6, 7).

---

[4] Generally, a district court may not consider documents or matters extraneous to the pleadings in ruling on a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426. However, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Here, Plaintiff does not dispute the authenticity of the employee handbook and, as described above, his claims are based on requirements and policies found in the handbook. Thus, the Court may properly consider it.

Defendant contends that Plaintiff's invocation of the integral and indispensable test misses the point because it does not address the applicability of the ECFA. (Def. Reply Br. at 2). Recall, the ECFA applies to travel in a company vehicle and "<u>activities performed by an employee which are incidental to the use of such vehicle.</u>" 29 U.S.C. § 254(a) (emphasis added). For Defendant, because the ECFA applies, the issue is not whether the storage of tools in the company vehicle is integral and indispensable to a principal activity (a test that originates from the Portal-to-Portal Act amendment of the FLSA) but rather whether it is incidental to Plaintiff's commute in the company truck. (Def. Reply Br. at 2).

While Defendant may be technically correct, the Court views this as a distinction without a difference. Courts often treat the integral and indispensable inquiry and the ECFA's incidental test as two sides of the same coin. See, e.g., Brand v. Comcast Corp., 135 F. Supp. 3d 713, 731 (N.D. Ill. 2015) ("[I]f activities are 'integral and indispensable' to the employees' principal activities, then they are compensable, but if, on the other hand, they are 'incidental' to the use of a company vehicle for commuting, they are not."); Luster v. AWP, Inc., No. 16-cv-02613, 2020 WL 6119418, at *5 (N.D. Ohio Oct. 16, 2020) ("Courts have struggled with the distinction between incidental activities and integral and indispensable ones."). In essence then, by arguing that the storage and transportation of Plaintiff's tools was an integral and indispensable part of his job duties, Plaintiff is also arguing that these actions were not incidental to his use of PES's truck.[5]

Nevertheless, Plaintiff's argument fails because the allegations in the original Complaint and the PAC are insufficient to raise a plausible inference that Plaintiff's commute time is

---

[5] To the extent Plaintiff is arguing that an activity can be both integral and indispensable to a principal activity and also incidental to the use of a company vehicle, the Court agrees with Defendant that this argument is unavailing. (Def. Reply Br. at 3); Chambers, 428 F. App'x at 414 n.38 (explaining that this interpretation of the statute would "render the ECFA meaningless").

8

compensable. The original Complaint alleges that the storage of the trucks and the tools at Plaintiff's home predominantly benefitted Defendant. (Compl. ¶ 69). This is simply a recitation of the legal test governing whether an activity is a principal activity, which cannot adequately support Plaintiff's FLSA claim. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009) (explaining that a court may disregard legal conclusions in a complaint). The PAC adds some detail, mostly by alleging that the trucks were "mobile workshops" that carried "hundreds of pounds" of specialized tools and parts. (PAC ¶¶ 56, 57). However, the PAC's additional allegations are also inadequate: courts have consistently held that the mere transportation of tools in a company-owned vehicle is incidental to the use of the vehicle and, therefore, does not make an employee's commute time compensable. See, e.g., Chagoya v. City of Chi., 992 F.3d 607, 622–23 (7th Cir. 2021) (concluding that the Chicago police department did not need to compensate SWAT operators for "the off-duty transportation, loading and unloading, and storage of SWAT equipment"); Colella, 986 F. Supp. 2d at 338–39 (holding that the transportation of work equipment in vehicles owned and issued by the fire department did not make firefighters' commute compensable); Chambers, 428 F App'x at 417 (explaining that the transportation of tools and supplies by in-home service technicians did not make their commute compensable).

The cases cited by Plaintiff do not change this conclusion. In his initial brief, Plaintiff relies heavily on Lassen v. Hoyt Livery, Inc., 120 F. Supp. 3d 165 (D. Conn. 2015). (Pl. Br. at 5–7). There, a limousine driver brought an FLSA suit against his employer alleging, among other things, that he should be compensated for the time spent driving to pick up his first passenger of the day. Hoyt, 120 F. Supp. 3d at 173–74. The court found this time compensable, reasoning that the commute to the first passenger's location was "integral and indispensable" to the driver's principal activity of picking up and transporting passengers. Id. at 174–75 (internal

quotation omitted).  Similarly, here, Plaintiff argues he "could not perform the duties of [his] position if he did not transport his mobile workshop[] to [his] assignments from [his] home." (Pl. Br. at 7).

Plaintiff's comparison to Hoyt is unavailing.  In Hoyt, the court's reasoning relied primarily on the fact that the plaintiff's "car [was] 'the actual place where he does what he is employed to do.'" 120 F. Supp. 3d at 175 (quoting Powell v. Carey Int'l, Inc., 514 F. Supp. 2d 1302, 1322 (S.D. Fla. 2007)).  Here, however, Plaintiff does not allege that he performed any work in Defendant's truck—it merely transported the materials Plaintiff used to service customer sites.  Thus, the truck is fundamentally different from the limousine in Hoyt because it is "two steps removed" from Plaintiff's performance of his job duties.  Balestrieri v. Menlo Park Fire Prot. Dist., 800 F.3d 1094, 1101 (9th Cir. 2015) (explaining that the loading and unloading of tools and gear was not indispensable to firefighters' primary activities).

In his sur-reply brief, Plaintiff favorably cites Burton v. Hillsborough County, 181 F. App'x 829 (11th Cir. 2006).  (Pl. Sur-Reply Br. at 2–3).  There, the Eleventh Circuit held that employees were entitled to overtime compensation for time spent driving an employer-owned vehicle from an employer-owned parking site to their first work site of the day and driving from their last work site of the day back to the parking site.  Burton, 181 F. App'x at 833–39.  However, that decision rested heavily on the fact that the employees were required to report to the parking site to pick up and drop off the vehicles at the beginning and end of the day.  Id. at 834–35.  The court explained: "where an employer's mandate or job requirement interrupts an employee's home-to-work and work-to-home path, the travel time necessary to fulfill that requirement. . . is. . . compensable under the FLSA."  Id. at 834–35.  On the other hand, the court also recognized that regular home-to-work travel in a company vehicle was not compensable

under the ECFA. Id. at 835. Here, one of Plaintiff's primary allegations in favor of compensation is that he was required to keep Defendant's truck at home, thereby mitigating the need for any intermediate stops prior to visiting first customer site of the day and before returning home at the end of the day. (Pl. Br. at 6); (PAC ¶ 55). Because Plaintiff does not allege his home-to-work and work-to-home travel was interrupted by any requirement that he report to a centralized location, Burton's reasoning does not support Plaintiff's argument that his commute time is compensable.

Finally, Plaintiff attempts to support his argument by pointing to a line of cases holding that the transportation of tools is compensable when those tools are heavy and specialized. (Pl. Sur-Reply Br. at 3) (citing Medina v. Ricardos Mech., Inc., No. 16-cv-01407, 2018 WL 3973007 (E.D.N.Y. Aug. 20, 2018); Clarke v. City of N.Y., No. 06-cv-11397, 2008 WL 3398474 (S.D.N.Y. June 16, 2008)). The PAC does indeed allege that the tools transported by Plaintiff were "specialized" and weighed "hundreds of pounds." (PAC ¶ 56). However, the purportedly favorable decisions cited by Plaintiff were predicated on the effort and exertion it took the employees to transport the tools each day. See, e.g., Clarke, No. 06-cv-11397, 2008 WL 3398474, at *5–*6 (explaining that "responsibility for the equipment does not, by itself, make. . .commuting time compensable" but carrying heavy bags or burdensome equipment during a commute is compensable). Plaintiff, conversely, does not allege that transporting the tools took any effort on his part—neither the original Complaint nor the PAC contains any indication that the tools ever left Defendant's truck. See id. at *7 (granting summary judgment for the defendant on FLSA claims made by plaintiffs who commuted via car because "there is nothing to suggest that plaintiffs who drive to work are burdened substantially by the presence of the. . . equipment, as they do not need to carry their. . . equipment at all"); Medina, No. 16-cv-01407,

11

2018 WL 3973007, at *4 ("The majority of cases, however, state that, in the context of picking up tools or equipment, the employee must actually load the tools onto the truck, or do other work, in order for the workday to begin."). Therefore, Plaintiff's allegation that the tools were heavy is inconsequential with regard to the issue of whether or not the transportation of the tools made his commute compensable.

Despite Plaintiff's arguments, the best analogy to the facts here comes from Chambers v. Sears Roebuck & Co., 428 F. App'x 400 (5th Cir. 2011). In that case, in-home service technicians employed by Sears brought suit alleging that Sears failed to pay them overtime for the time they spent commuting to their first call of the day and the time they spent traveling home from their last call of the day. Id. at 403, 410. Like Plaintiff here, the in-home service technicians kept a company-owned van at their homes overnight so that they did not have to report to a centralized location at the beginning and end of the day. Id. at 403. They alleged that a number of activities they were required to perform, including the transportation of tools and other materials, made their commute compensable under the FLSA. Id. at 411, 416–17. The Fifth Circuit disagreed, however, concluding that "the transportation of tools and parts in the company van. . . [is] incidental to the technicians' commute under the ECFA. . . ." Id. at 417. The court cited the House Report for the ECFA, which states "merely transporting tools or supplies should not change the noncompensable nature of the travel." Id. (quoting H.R. Rep. No. 104-585, at 5).

Like the court in Chambers, the Court finds that the transportation of tools and other materials does not make Plaintiff's commute compensable under the ECFA. Plaintiff has not identified any facts or allegations, in the original Complaint or the PAC, to change the FLSA's underlying assumption that ordinary commute time is not compensable. Rather, the statutory

12

text, the body of persuasive case law, and the legislative history all suggest that Plaintiff's maintenance and transportation of tools in a company vehicle does not transform his commute into compensable work.

Thus, with respect to the FLSA claim based on Plaintiff's commute time allegations, the Court finds the original Complaint deficient. The proposed amendments in the PAC fare no better. The Court will grant Defendant's motion to dismiss the FLSA claim based on Plaintiff's commute time with prejudice.

            2. The Postliminary Allegations

In the PAC, Plaintiff also alleges Defendant violated the FLSA by failing to compensate him for a number of tasks he completed after he returned home from work each day. (PAC ¶ 64). These tasks include "completing and submitting paperwork related to services performed, checking the service board to ensure all customer services were completed, and responding to all e-mails." (PAC ¶ 64). The Court finds that the PAC plausibly alleges that this activity is compensable and will allow Plaintiff to amend his Complaint to add these allegations.

Unlike the transportation of tools and other materials, Plaintiff's post-work activities are not incidental to his commute in Defendant's vehicle. On this point, Rutti v. Lojack Corp., 596 F.3d 1046 (9th Cir. 2010), is instructive. In Rutti, the employees alleged they were not compensated for tasks they performed both before and after work. Id. at 1057–58. The court held that the preliminary activities, including "receiving, mapping, and prioritizing jobs and routes for assignment," were not compensable, whereas there was a genuine issue of fact as to whether the employees' postliminary activities, which included transmitting data to their employers about the tasks they had performed that day, were compensable. Id. The court explained the preliminary activities were related to the employees' commute. Id. at 1057–58.

The postliminary activities, however, were apparently "part of the regular work of the employees in the ordinary course of business." Id. at 1058 (quoting Dunlop v. City Elec., Inc., 527 F.2d 394, 401 (5th Cir. 1976)). Other cases have made a similar distinction between the post-work transmission of information related to an employee's job duties, and other activities, such as the inspection of vehicles, that are more closely related to commuting. See, e.g., Espenscheid v. DirectSat USA, LLC, No. 09-cv-00625, 2011 WL 10069108, at *22 (W.D. Wis. Apr. 11, 2011) (holding that postliminary activities, "including calling customers. . .and performing certain types of paperwork such as closing out jobs" were compensable while time spent "receiving and mapping routes and performing vehicle maintenance and checks" were not). Here, Plaintiff alleges he transmitted information to Defendant and communicated with customers after work. As Rutti illustrates, those activities are not related to his commute but rather associated with his principal activity of servicing customer sites.

The cases cited by Defendant in which preliminary and postliminary activities were found not compensable are distinguishable. Importantly, most of those cases were decided at the summary judgment stage.[6] At that point, the record had been adequately developed to determine how much time and effort the employees expended on their preliminary and postliminary tasks. E.g., Buzek v. Pepsi Bottling Grp., Inc., 501 F. Supp. 2d 876, 877–78 (S.D. Tex. 2007) (discussing the amount of time the employee spent on his "end-of-day communication" based on deposition testimony); Donatti v. Charter Commc'ns, LLC, 950 F. Supp. 2d 1038, 1042–47 (W.D. Mo. 2013) (utilizing discovery material to provide background on the various activities

---

[6] One of the only cases cited by Defendant that was decided as a motion to dismiss is Luster v. AWP, Inc., No. 16-cv-02613, 2020 WL 6119418 (N.D. Ohio Oct. 16, 2020). Luster is not analogous to the facts here, however, because the plaintiffs there argued they should be compensated for preliminary and postliminary activities that were connected to their use of their employer's vehicles. Id. at *1. These activities included completing pre-trip and post-trip vehicle inspections and fueling the vehicles. Id. As discussed above, here, the postliminary activities described in the PAC were not related to the use of PES's truck.

performed by the employees). However, because this case is at the motion to dismiss stage, the Court does not have the benefit of a developed record. After further discovery, it may well turn out that Defendant is correct that Plaintiff's postliminary activities are not compensable because, for example, they are de minimis. Rutti, 596 F.3d at 1054 ("[A]ctivity that might otherwise be compensable is not if the time involved is de minimis."). But the Court may not make this determination without more information about the nature of Plaintiff's post-work activities.

In all, the PAC plausibly alleges an FLSA violation regarding Plaintiff's after work activities, and Plaintiff's motion to amend his Complaint to add these allegations will be granted.

### C. The New Jersey Statutory Claims

Plaintiff alleges Defendant violated the NJWHL by failing to pay him overtime compensation and the NJWPL by failing to pay him for all the hours he worked. The Court addresses the plausibility of Plaintiff's allegations under each statute.

#### 1. The New Jersey Wage and Hour Law

Plaintiff alleges he should have been compensated for his commute time and postliminary activities under the NJWHL. Like the FLSA, the NJWHL requires "an employer to pay an employee who works more than forty hours per week at a rate of one-and-one half times the employee's regular hourly rate for every hour after the fortieth. . . ." Marx v. Friendly Ice Cream Corp., 882 A.2d 374, 378 (N.J. Super. Ct. App. Div. 2005) (citing N.J. Stat. Ann. § 34:11-56a4). And, like the FLSA, the NJWHL does not define what constitutes "work." See Vaccaro v. Amazon.com.dedc, LLC, No. 18-cv-11852, 2020 WL 3496973, at *4 (D.N.J. June 29, 2020) (explaining that neither the statute nor the administrative regulations implementing the statute define the term "place of work"). The New Jersey Supreme Court also has not addressed the meaning of the term. Id. Without any state-level precedent, the Court must predict how the New

Jersey Supreme Court would define "work." See Thompson v. Real Estate Mortg. Network, Inc., 106 F. Supp. 3d 486, 489 (D.N.J. 2015). In so doing, the Court may look to guidance from the FLSA context because, as numerous courts have held, "[t]he NJWHL mirrors its federal counterpart." Abarca v. KC Consulting Grp., Inc., No. 16-cv-00213, 2018 WL 2215516, at *4 (D.N.J. May 14, 2018); see also Crisostomo v. Exclusive Dealing, Inc., No. 08-cv-01771, 2010 WL 2640183, at *5 (D.N.J. June 28, 2010).

As an initial matter, the Court finds that Plaintiff has adequately alleged that his postliminary activities are compensable under the NJWHL. Given the similarities between the FLSA and the NJWHL, it follows from the Court's holding above that the postliminary allegations in the PAC are sufficient under the state statute as well.

The commute time allegations present a more complicated issue. While the FLSA and the NJWHL are similar, the parties dispute whether the latter statute incorporates the Portal-to-Portal Act and ECFA amendments to the FLSA. (Pl. Br. at 9–10); (Def. Reply Br. at 7–8); (Pl. Sur-Reply Br. at 5–6). As described above, the Portal-to-Portal Act modified the FLSA to make travel to and from work and preliminary and postliminary activities not compensable. See 29 U.S.C. 254(a). The ECFA further modified the Portal-to-Portal Act to clarify that the use of an employer's vehicle for commuting purposes is not compensable when it is within the normal commuting area and subject to an agreement between the employer and the employee. Id. In Section II.B.1, the Court held that the commute time allegations failed to state an FLSA claim pursuant to those amendments. So, if the NJWHL does not incorporate the amendments, the commute time allegations may plausibly state an NJWHL violation even though they were insufficient under the FLSA.

First, the NJWHL does not incorporate the ECFA because the ECFA was passed after the NJWHL. The NJWHL was passed in 1966, Hargrove v. Sleepy's, LLC, 106 A.3d 449, 463 (N.J. 2015), and the ECFA was passed in 1996, Chagoya, 992 F.3d at 618. Given that the ECFA was enacted thirty years after the NJWHL, and in the absence of any evidence indicating that New Jersey has subsequently endorsed the ECFA, the Court concludes the NJWHL does not incorporate the ECFA's provisions relating to travel time in an employer-owned vehicle.

Second, the Court finds that the NJWHL also does not incorporate the original Portal-to-Portal Act amendments. In Vaccaro v. Amazon.com.dedc, LLC, Chief Judge Wolfson predicted that the New Jersey Supreme Court would hold that the NJWHL does not incorporate the Portal-to-Portal Act.[7] No. 18-cv-11852, 2020 WL 3496973, at *5–*6. She pointed out that the NJWHL expressly refers to certain provisions of the FLSA without specifically referencing the Portal-to-Portal Act, and that the NJWHL contains provisions that directly conflict with the Portal-to-Portal Act.[8] Id. at *6. The Court finds Vaccaro's reasoning persuasive and also concludes that the NJWHL does not incorporate the Portal-to-Portal Act's provisions making travel time to and from work and preliminary and postliminary activities non-compensable.

---

[7] Defendant argues that Vaccaro only addressed the preliminary and postliminary exclusions rather than the entire Portal-to-Portal Act. (Def. Reply Br. at 7). It is true that the facts of the case only implicated the preliminary and postliminary exclusions. Vaccaro, No. 18-cv-11852, 2020 WL 3496973, at *6 (finding that "the New Jersey legislature did not intend to incorporate the Portal-to-Portal Act's exclusions for 'preliminary' and 'postliminary' activities into the NJWHL"). But the Court sees no reason why Vaccaro's reasoning should not be applied to the entirety of the Portal-to-Portal Act.

[8] In support of this proposition, the Vaccaro court cited two New Jersey administrative regulations dealing with travel time. Vaccaro, No. 18-cv-11852, 2020 WL 3496973, at *6 (citing N.J. Admin. Code § 12:57-3.7; § 5.7). The regulations at issue state that minors engaged in mercantile occupations and laundry, cleaning, and dyeing occupations must be compensated at the employer's regular wage rate for "travel from one establishment to another after the beginning or before the ending of his or her work day. . . ." N.J. Admin. Code § 12:57-3.7; § 5.7. Defendant argues that, because these regulations are limited to certain occupations, the NJWHL as a whole "does not require employers to compensate all commuting time." (Def. Br. at 11). The Court declines to infer that the NJWHL broadly exempts all commute time for every employee from two regulations that only apply to minors. See N.J. Dep't of Labor v. Pepsi-Cola Co., 784 A.2d 64, 66 (N.J. 2001) ("The remedial purpose of the Wage and Hour Law dictates that it should be given a liberal construction.").

Therefore, for the Court's purposes here, the NJWHL is akin to the original FLSA, which did not include the Portal-to-Portal Act and ECFA amendments.

The Court must still determine whether Plaintiff's commute time would have been compensable under the original FLSA. Defendant argues that, even under an FLSA without the Portal-to-Portal Act and ECFA amendments, Plaintiff's commute would not be compensable and, therefore, the NJWHL also does not provide compensation for this time. (Def Br. at 11); (Def. Reply Br. at 7–8). The Court disagrees: the early FLSA cases espouse a much broader interpretation of the statute that could encompass Plaintiff's commute in a company truck. Under those cases, "work" is defined as any activity "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944). That test is met here because Plaintiff plausibly alleges that the use of the company truck was required by Defendant (PAC ¶¶ 55, 57, 58, 59), performed according to Defendant's specifications (PAC ¶¶ 55, 57, 58, 59), and the program made Defendant's operations more efficient by allowing Plaintiff to easily access customer sites and respond to emergency service requests, (PAC ¶¶ 60, 61, 62).

This conclusion finds support in pre-Portal-to-Portal Act FLSA cases which indicate that certain travel time was compensable. See Anderson, 328 U.S. 680; Jewell Ridge Coal Corp. v. Local No. 6167, 325 U.S. 161 (1945); Tenn. Coal, Iron & R. Co., 321 U.S. 590. For example, in Walling v. Anaconda Copper Mining Co., 65 F. Supp. 913 (D. Mont. 1946), the court held that loggers needed to be compensated for time spent on company transportation from a camp at which most of them lived during the workweek to the company's logging operations in the woods and back to the camp at the end of the day. Id. at 914–15, 916, 920–21. The fact that the loggers (1) used vehicles provided by the company, and (2) lived at the camp during the week,

id. at 914–15, suggests significant overlap with the facts here where Plaintiff commuted from his home using Defendant's truck. As such, while Defendant may be correct that "normal" commute time was not compensable under the original FLSA, the early cases indicate that Plaintiff's commute in a company-owned truck carrying the tools necessary for his work may not have been considered a "normal" commute at that time.

In all, because the NJWHL does not incorporate the Portal-to-Portal Act and the ECFA, the Court finds the commute time allegations in the PAC sufficient state a claim under the New Jersey statute. The Court will deny Defendant's motion to dismiss Plaintiff's NJWHL claim and grant Plaintiff's motion to amend the complaint to add the commute time allegations.

### 2. The New Jersey Wage Payment Law

The Court also finds that Plaintiff has plausibly alleged a violation of the NJWPL. The NJWPL governs "the manner, mode, and time of wage payment, as well as when an employer may withhold part of an employee's paycheck." Piscopo v. Pub. Serv. Elec. & Gas Co., No. 13-cv-00552, 2014 WL 3014284, at *5 (D.N.J. Jul. 3, 2014). In relevant part, the NJWPL prohibits an employer from "withhold[ing] or divert[ing] any portion of an employee's wage unless the employer is required or empowered to do so by New Jersey or United States law" or the wage is withheld pursuant to other exceptions not at issue here. N.J. Stat. Ann. § 34:11-4.4. The statute defines "wages" as "direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." N.J. Stat. Ann. § 34:11-4.1.

Plaintiff argues that, because the NJWPL "requires the payment of all 'wages' due," he is entitled to payment for all compensable time, including his commute time and post-work

19

activities, under the statute. (Pl. Br. at 10). Defendant argues Plaintiff's NJWPL claim fails because its employment policy explicitly excluded this time from Plaintiff's "wages." (Def. Br. at 12). Neither party cites any law to support their position. As such, without any guidance from the parties, the Court is unprepared to grant Defendant's motion to dismiss and deny Plaintiff's motion to amend with regard to the NJWPL claim at this time.

### III. ORDER

For the foregoing reasons, it is **SO ORDERED** that Plaintiff's motion for leave to amend his Complaint is **GRANTED**; and it is further

**ORDERED** that Defendant's motion to dismiss is **DENIED** in part and **GRANTED** in part; and it is further

**ORDERED** that Defendant's motion to dismiss is **GRANTED** as to the FLSA claim based on Plaintiff's commute using Defendant's truck; and it is further

**ORDERED** that the FLSA claim based on Plaintiff's commute using Defendant's truck is **DISMISSED** with prejudice; and it is further

**ORDERED** that Defendant's motion to dismiss is **DENIED** with respect to all other claims in Plaintiff's Proposed Amended Complaint, including the FLSA claim based on Plaintiff's post-work activities.

   s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: March 9, 2022